IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:19-CV-90-BO

DOMINIC FRANKS,  )
        Plaintiff,  )
          )
v.  )        O R D E R
          )
ERNIE COLEMAN, in his individual  )
capacity and in his official capacity as  )
Sheriff of Beaufort County and WILLIAM  )
RAGLAND, in his individual capacity,  )
        Defendants.  )

This cause comes before the Court on a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure filed by defendants Ernie Coleman and William Ragland. Plaintiff has responded, defendants have replied, and the matter is ripe for ruling. For the reasons that follow, defendants' motion is granted in part and denied in part.

## BACKGROUND

A. Plaintiff's claims

In his second amended complaint, [DE 48], plaintiff alleges that this is an action for hostile work environment, racial harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 as amended. 42 U.S.C. § 2000e, *et seq*. Plaintiff also alleges a 42 U.S.C. § 1983 claim for retaliation in violation of 42 U.S.C. § 1981 as well as North Carolina state law claims for intentional infliction of emotional distress, assault, and defamation *per se*.

Plaintiff lists the following individuals as parties to this action: Ernie Coleman, in his official and individual capacities; Kelly Cox, in his individual capacity; William Ragland, in his individual capacity; and John Does 1-10. [DE 48 at 5]. Plaintiff's first Title VII claim, Count One,

discusses actions by Coleman, Ragland, and Cox, and further alleges that defendant Coleman, in his official capacity as Sheriff, is liable for the acts of Ragland, Coleman, and Cox. Specifically, plaintiff alleges that Sheriff Coleman in his official capacity, through the actions of Ragland, Coleman, and Cox, created a racially hostile and abusive work environment by permitting plaintiff to be subjected to pervasive and racially motivated harassment as well as retaliating against plaintiff for engaging in protected activity. Thus, although Cox and Ragland are referenced in Count One, the claim has not been alleged against them.

Count Two, plaintiff's claim for retaliation in violation of Title VII, alleges retaliation in response to plaintiff filing a charge of discrimination against the Beaufort County Sheriff's Office. Count Two similarly discusses the conduct of additional persons, including Cox and Charlie Rose, but is alleged only against defendant Coleman in his official capacity. Plaintiff's Section 1981 retaliation claim, Count Five, is also alleged defendant Coleman only. Plaintiff's state law claims for intentional infliction of emotional distress and assault (Counts Three and Four) are alleged against defendant Ragland in his individual capacity. Finally, plaintiff's claim for defamation *per se* is alleged against defendant Coleman.[1]

Accordingly, a fair reading of the operative complaint reveals that claims have been alleged only against defendant Coleman in his official and individual capacity and defendant Ragland in his individual capacity. *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) (amended complaint renders prior complaint of no effect). The clerk is directed to correct the docket to reflect that Cox and Rose are no longer named defendants.

B. Factual background

---

[1] The Court assumes that the defamation claim has been alleged against defendant Coleman in his individual capacity. *See, e.g., Foreman v. Griffith*, 81 F. App'x 432, 435 (4th Cir. 2003)

2

The following facts are derived from defendants' statement of undisputed material facts and plaintiff's response thereto unless otherwise noted. [DE 53 & 57]. On July 16, 2015, plaintiff was hired by the Beaufort County Sheriff's Office and assigned to a patrol shift. Plaintiff's immediate supervisor was Corporeal Michael Sheppard. Defendant William Ragland was the shift sergeant and Sheppard's immediate supervisor. Defendant Ragland's immediate supervisor was First Sergeant Kent Hill and Kelly Cox was Lieutenant of the Patrol Division. Charlie Rose was Chief Deputy and second-in-command to defendant Sheriff Coleman.

Sheppard[2] and plaintiff allege that in November 2016, Ragland walked into a deputy room, pointed a gun at his own head, and then pointed a gun at plaintiff's head, saying "what's up, my n****", while reciting lyrics from a song. Plaintiff and Sheppard contend that the event lasted approximately fifteen seconds and that this was the only instance in which Ragland ever referred to plaintiff as a "n****."

Plaintiff was fired from his employment as a deputy sheriff with the Beaufort County Sheriff's Office on February 8, 2017. On February 23, 2017, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) which alleged retaliation during, but not following his employment. In his EEOC charge, plaintiff alleged that beginning in November 2016 he was subjected to a racially hostile work environment. [DE 54-1]. Plaintiff charged that Sergeant William T. Ragland and Lieutenant Kelly Cox used racial slurs such as "n*****" and "monkey boy," and made comments about plaintiff's hair. Plaintiff charged that in November and December 2016, Ragland pulled his weapon and pointed it at plaintiff, and further that Sheriff Coleman called plaintiff "that boy" and treated plaintiff as though he were disabled due to his having served in war. *Id.* Plaintiff charged that after complaining he was given

---

[2] Sheppard filed a separate lawsuit against Sheriff Coleman. No. 4:19-CV-86-D (E.D.N.C.).

3

extra assignments and harassed on a continuous basis and that he was ultimately forced to resign his position. *Id.* On March 14, 2019, the EEOC issued a right to sue letter [DE 62-1], and this lawsuit followed on June 18, 2019.

Beaufort County Sheriff's Office Policy 2.04 prohibits sexual and unlawful harassment, including racial harassment. Victims of unlawful harassment can report the harassment to anyone, including the Sheriff, without regard to the chain of command. Someone may also complain about unlawful harassment on behalf of any person without regard to the chain of command. The Policy further provides that flagrant or serious violations should be immediately reported to the Sheriff. The Beaufort County Sheriff's Office also has a formal grievance policy, through which employees may initiate proceedings to resolve matters concerning unfair treatment with regard to the terms and conditions of their employment.

On January 27, 2020, defendant Coleman sent a letter to the Beaufort County District Attorney regarding plaintiff. [DE 54-2]. The letter recounts a meeting held on July 11, 2019, with Sheriff Coleman and the Beaufort County District Attorney at which Sheriff Coleman detailed incidents with deputies from Beaufort County and members of the public wherein plaintiff had been the aggressor. Sheriff Coleman "felt that the nature of the incidents showed a pattern of behavior that is unbecoming for a law enforcement officer and there were several documented indicators of criminal behavior." *Id.* Plaintiff was then working as a sheriff's deputy in Washington County and lived in Beaufort County.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue

4

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

At the outset, plaintiff has expressly abandoned his claims against defendant Coleman for retaliation and defamation *per se*. [DE 59 at 1-2]. Although plaintiff argues in his opposition to the pending motion that defendant Cox failed to move for summary judgment, no claim has been alleged against Cox in the operative complaint. Plaintiff also states that he is proceeding on his hostile work environment claim against Ragland but, as discussed above, this claim has been alleged only against defendant Coleman.

A plaintiff is not permitted to amend a complaint through arguments raised in opposition to a motion for summary judgment. *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008). Accordingly, based up the Court's construction of the claims alleged and plaintiff's express abandonment of certain claims, only plaintiff's claim under Title

5

VII for hostile work environment against Coleman in his official capacity and his claims against Ragland in his individual capacity for intentional infliction of emotional distress and assault remain.

Genuine issues of material fact preclude entry of summary judgment on plaintiff's hostile work environment claim.[3] To prove a hostile work environment claim, a plaintiff must show "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected status]; (3) which is sufficiently severe or pervasive to alter her conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018) (citing *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)). Plaintiff has forecast evidence that, at a minimum, Ragland's conduct in the deputy room in November 2016 was unwelcome and based upon plaintiff's protected status. Additionally, an isolated incident of harassment can amount to a hostile work environment where the incident is "extremely serious." *Boyer-Liberto*, 786 F.3d at 277. Whether the harassment was perpetrated by a supervisor is relevant to determining whether an isolated incident amounts to a hostile work environment, as "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character". *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998). Here, a reasonable jury could conclude that Ragland's actions in holding his loaded service weapon to plaintiff's head while using a racial slur was sufficient to create a hostile work environment.

The primary issue in this case is whether the conduct which forms the basis of plaintiff's claim is imputable to Sheriff Coleman. "If the harasser is a supervisor, then the employer may be

---

[3] Plaintiff has submitted video evidence which purports to show Beaufort County Sheriff's Office deputies boxing in plaintiff's vehicle and accelerating toward him on December 18, 2017. [DE 65]. The Court has been unable to access the video files in the format provided. However, as they concern conduct which appears to relate to plaintiff's abandoned claim for post-termination retaliation, the Court determines that the video files are not material to its consideration of the motion for summary judgment.

either strictly or vicariously liable for the supervisor's actions." *Strothers*, 895 F.3d at 333. "[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). Tangible employment actions include hiring, firing, and reassignment with significantly different responsibilities. *Id.* at 432.

> If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.

*Id.* at 424.

The record reflects that Ragland was the shift sergeant for plaintiff's shift. Ragland was responsible for performance reviews and could reassign deputies on his shift to significantly different responsibilities. Sheriff Coleman testified that Ragland was plaintiff's supervisor. [DE 54-3] Coleman Depo p. 193. Taking the evidence in the light most favorable to plaintiff, a reasonable jury could conclude that Ragland was plaintiff's supervisor for purposes of Title VII. *See also Lindquist v. Tanner*, No. CA 2:11-3181-RMG, 2013 WL 4441946, at *3 (D.S.C. Aug. 15, 2013). The Court further finds that a genuine issue of material fact exists as to whether Coleman can establish an affirmative defense, specifically whether plaintiff unreasonably failed to take advantage of preventive or corrective opportunities. *See* [DE 54-5] Franks Depo. pp. 104; 108; 110-111.

In sum, the Court concludes that summary judgment is not appropriate on this record on plaintiff's Title VII hostile work environment claim. The Court further finds that public officer immunity does not shield defendant Ragland from plaintiff's state law claims for intentional infliction of emotional distress and assault. Public officer immunity protects public officials

7

performing discretionary acts unless their acts are found to be malicious, corrupt, or outside the scope of their duties. *Evans v. Chalmers*, 703 F.3d 636, 657 (4th Cir. 2012). Although defendants argue that plaintiff's complaint alleges that Ragland was acting within the scope of his duties, that allegation concerns plaintiff's Title VII claim, [DE 48 ¶ 40], and it appears plain that pointing his service weapon at plaintiff's head would not have been a discretionary act performed as part of Ragland's official duties. *See Perry v. Pamlico Cty.*, 88 F. Supp. 3d 518, 533 (E.D.N.C. 2015). Moreover, a reasonable jury could conclude that Ragland's actions were malicious and wanton. *Id*. And as genuine issues of material fact have been presented on this record, the Court will permit the state law claims to proceed to trial.

## CONCLUSION

Accordingly, for the foregoing reasons, defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Plaintiff has abandoned his claims for retaliation and defamation *per se* and those claims are properly dismissed. Defendant's motion for summary judgment is DENIED as to plaintiff's Title VII hostile work environment claim and state law claims for intentional infliction of emotional distress and assault.

The clerk is DIRECTED to promptly refer this matter for pretrial conference. Trial will commence on Monday, November 22, 2021, at 10:00 a.m. at the United States Courthouse at Elizabeth City, North Carolina. The clerk is further directed to correct the docket in accordance with the foregoing.

SO ORDERED, this 29 day of September, 2021.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE